UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEASNA OTH,<br><br>            Petitioner,<br><br>    v.<br><br>CHRISTOPHER CHESTNUT, in his official capacity, Facility Administrator of California City Detention Facility, et al.,<br><br>            Respondents. | Case No.  1:25-cv-01367-KES-HBK (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS[1]<br><br>(Doc. 1)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

      Petitioner Veasna Oth, an immigrant detainee in U.S. Immigration Customs and Enforcement (ICE) custody at the California City Detention Center in California City, California, initiated this action by filing, with counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed on October 14, 2025.  (Doc. 1, "Petition").  The Petition raises the following claim for relief: Petitioner's ongoing detention under 8 U.S.C. § 1226(c) without a bond hearing has become "prolonged" in violation of his Fifth Amendment procedural due process rights.  (*Id*. at 15-23).  As relief, Petitioner asks the Court, *inter alia*, to order his release within 14 days unless Respondents schedule a hearing to take place before a neutral arbiter where the government must establish with clear and convincing evidence that Petitioner presents a current

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

risk of flight or danger, and if the government cannot meet that burden, order Petitioner's release. (*Id*. at 23-24).

On December 8, 2025, Respondent filed an opposition to the Petition arguing that Petitioner's detention is mandatory pursuant to 8 U.S.C. § 1226(c) because he is an aggravated crime of violence felony offender, and due process concerns regarding indefinite detention do not apply here because Petitioner's "detention under § 1226(c) has a 'definite termination point': the conclusion of removal proceedings." (Doc. 9 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018) (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003) (mandatory detention under 8 U.S.C. § 1226(c) has a "definite termination point" when a decision is made regarding an alien's removability)). On January 7, 2026, Petitioner filed a reply arguing that his as-applied procedural due process challenge is not foreclosed by § 1226(c), *Jennings*, or *Demore*; and his decision to exercise his right to appeal does not foreclose his due process challenge. (Doc. 10 at 3-8). Petitioner also restates his argument in the Petition that he has a protected liberty interest in freedom from prolonged detention, and after applying the factors in *Mathews v. Eldridge*,[2] his continued detention without a bond hearing has become prolonged and therefore violates his procedural due process rights under the Fifth Amendment. (*Id*. at 9-17).

Significant is Petitioner's undisputed status under § 1226(c) for having committed the aggravated felony of voluntary manslaughter, with enhancements for use of a firearm in a felony and street terrorism. Given his detention status the undersigned recommends the district court deny the Petition for the reasons set forth below.

## I.   BACKGROUND

Petitioner is a native of the Philippines and citizen of Cambodia. (Doc. 1-2 at 2, ¶ 2). He was admitted to the United States as a refugee when he was two weeks old. (*Id*. at ¶ 3). He was granted Lawful Permanent Resident status in the United States on January 25, 1986, when he was one year old, and believed himself to be a U.S. citizen. (*Id*.). In 2003, Petitioner was convicted of voluntary manslaughter under California Penal Code § 192(a) with enhancements for use of a

---

[2] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

2

1  firearm in a felony and street terrorism. (*Id*. at 3-4, ¶ 9). He was sentenced to 31 years in prison. (*Id*.). He served 22 years and 8 months of his sentence and was released from state custody in November 2024. (*Id*. at 4, ¶¶ 10, 22).

Upon his release from prison, Petitioner was immediately detained by ICE pursuant to the mandatory detention provision of 8 U.S.C. § 1226(c). (Doc. 9 at 2). Based on his criminal history, ICE charged Petitioner with removability under § 1227(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") for having committed an aggravated felony as defined in INA § 1011(a)(43)(F). (*Id*.). Petitioner was given a two-month continuance to find an attorney, but was unable to do so, and at his next hearing he was found removable as charged. (Doc. 1-2 at 7, ¶ 24). Petitioner filed a pro se application for asylum, withholding of removal, and deferral of removal under the Convention Against Torture ("CAT"). (*Id*. at ¶ 25). On April 22, 2025, the Immigration Judge ("IJ") denied Petitioner's applications. (*Id*. at ¶ 25; Doc. 9 at 2). On June 26, 2025, after acquiring counsel, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"), and the appeal was denied on September 18, 2025. (Doc. 1-2 at 7, ¶ 26; Doc. 9 at 2). On October 10, 2025, Petitioner filed a petition for review ("PFR") of the BIA decision with the Ninth Circuit and filed a motion for stay of removal which was automatically granted pending further order of the court. (Doc. 1-2 at 8, ¶ 27; Doc. 9 at 2 (citing *Oth v. Bondi*, No. 25-6422)).

Petitioner is currently detained in ICE custody under the mandatory detention provision of § 236(c) of the INA, and he is being held at the California City Detention Center in California City, California. (Doc. 1-2 at 8, ¶ 29).

## II. APPLICABLE LAW AND ANALYSIS

### A. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that

3

federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention under § 1226(c).  *See Demore*, 538 U.S. at 517.

**B.  Mandatory Detention under 8 U.S.C. § 1226(c)**

Section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226, governs the apprehension and detention of noncitizens whose removal proceedings are pending.  "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).  Here, Petitioner is detained pursuant to 8 U.S.C. § 1226(c), which, in relevant part, provides:

> (c) Detention of criminal aliens
>
> > (1) Custody
> >
> > The Attorney General *shall* take into custody any alien who—
> >
> > > (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> > >
> > > (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> > >
> > > (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[1] to a term of imprisonment of at least 1 year, or
> > >
> > > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
> >
> > when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> \*\*\*
>
> > (4) Release
> >
> > The Attorney General *may release an alien described in paragraph (1) only if* the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies

4

> the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c)[3] (emphasis added); *Sanchez-Rivera v. Matuszewski*, 2023 WL 139801, *2 (S.D. Cal. Jan. 9, 2023) (noting aliens held under 8 U.S.C. § 1226(a) may seek a bond hearing, but "[a]liens detained under § 1226(c) do not get a bond hearing.  Instead, the Attorney General 'may' only release the alien if doing so is necessary for the limited witness-protection purposes and the alien shows that he 'will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceedings.").  In *Jennings v. Rodriguez*, the Supreme Court found that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'"  583 U.S. at 303-04 ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmation prohibition on releasing detained aliens under any other conditions.").  Accordingly, the Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id*.

Here, Petitioner has been detained for approximately 14 months (*See* Doc. 1-2 at 4, ¶¶ 10, 22) due to his prior conviction for the aggravated felony of voluntary manslaughter, with enhancements for use of a firearm in a felony and street terrorism.  (*Id*. at 3-4, ¶ 9).  It is undisputed that Petitioner's detention is mandatory under 8 U.S.C. § 1226(c) and he does not meet any of the conditions for release pursuant to § 1226(c)(2).  *See* 8 U.S.C. § 1226(c); *Jennings*. 583 U.S. at 303-04.  Thus, Petitioner is not <u>statutorily</u> entitled to a bond hearing.  *Id*.

---

[3] While not relevant here, in January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," and who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

However, Petitioner does not dispute the grounds for his mandatory detention; rather, he contends that his "prolonged" detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. (Doc. 1 at 15-23).

### C. Detention under 1226(c) without a Bond Hearing

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." Further, it is "well-established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 305 (1993*); Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("this Court has held that the Due Process Clause protects an alien subject to a final order of deportation"). However, the Supreme Court has repeatedly directed that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 513 ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules as to aliens that would be unacceptable if applied to citizens."); *see also Zadvydas*, 533 U.S. 718 (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens."); *Carlson v. Landon*, 342 U.S. 524, 538 ("Detention is necessarily a part of this deportation procedure. Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings.").

Relevant here, "[i]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (observing that "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context, whether the claims were brought by an alien under § 1226(a) or another provision."). The pertinent line of authority starts with *Zadvydas v. Davis*, 533 U.S. 678

6

(2001), wherein the Supreme Court addressed a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." *Prieto-Romero*, 534 F.3d at 1062 (citing *Zadvydas*, 533 U.S. at 684-86). The Court held that detention under § 1231(a)(6) is limited to a presumptively reasonable period of six months, after which a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. Notably, the Court specifically distinguished § 1231 from § 1226 because "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point." *Id*. at 697; *see also Jennings*, 583 U.S. at 304.

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial due process challenge to mandatory detention under 8 U.S.C. § 1226(c), and distinguished *Zadvydas* because mandatory detention under 8 U.S.C. § 1226(c) has a "definite termination point" when a decision is made regarding the alien's removability. *Id*. at 529. The Court recognized that Congress drafted § 1226(c) to respond to the increasing rates of crime and failure to appear for removal hearings among removable noncitizens convicted of certain crimes; thus, "the Government may constitutionally detain deportable [non-citizens] during the limited period necessary for their removal proceedings." *Id*. at 518-21, 526. Justice Kennedy concurred with the decision, thereby creating the majority, but noted "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." (*Id*. at 532) (Kennedy, J., concurring).

In 2015, the Ninth Circuit applied the canon of constitutional avoidance to hold that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention." *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015). However, in *Jennings v. Rodriguez*, the Supreme Court reversed *Rodriguez* and found the Ninth Circuit

7

misapplied the canon of constitutional avoidance and the "implicit 6-month time limit on the length of mandatory detention" under § 1226(c) fell "far short of a 'plausible statutory construction.'" 583 U.S. 281, 296, 303-04. The Court interpreted § 1226(c) to provide a "definite termination point" to the length of detention – the "conclusion of removal proceedings" – and remanded to the Ninth Circuit to "consider the constitutional arguments on their merits." *Id*. at 304. Thus, *Jennings* made clear that § 1226(c) authorized detention without a bond hearing on its face and "it expressly prohibits release from that detention except for narrow, witness-protection purposes," *id*., despite not providing specific guidance as to whether an alien could assert an as-applied challenge to prolonged detention without a bond hearing under the Fifth Amendment due process clause.

Despite the lack of specific guidance from the Supreme Court or the Ninth Circuit on whether due process requires a bond hearing under § 1226(c), multiple United States Circuit Courts and "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)." *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("according to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will – at some point – violate the right to due process."), *vacated on other grounds*, 144 S. Ct. 1339 (2024). A survey of decisions across the Circuits, and among the district courts within the Ninth Circuit, reveals a myriad of overlapping balancing tests applied to determine whether a petitioner's procedural due process rights under the Fifth Amendment were violated when they were not afforded a bond hearing while detained under § 1226(c). *See German Santos v. Warden Pike*, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing after finding mandatory detention for 2 ½ years was unreasonable according to reasonableness test fashioned from previous cases using four non-exhaustive factors: (1) duration of detention, (2) whether detention is likely to continue, (3) reasons for delay, and (4) whether the conditions of confinement are meaningfully different from criminal punishment.); *Alphonse v. Moniz*, 635 F.Supp.3d 28 (D. Mass. Oct. 17, 2022) (citing *Reid v. Donelan*, 390 F.Supp.3d 201, 219 (D. Mass. July 9, 2019)) (granting petition after applying five factor test: (1) total length of detention; (2) foreseeability of proceedings

8

concluding gin the near future (likely duration of future detention); (3) period of detention compared to criminal sentence; (4) promptness/delay of immigration authorities or detainee; (5) likelihood that proceedings will culminate in final removal order)); *Black v. Decker*, 103 F.4th 133, 138 (2nd Cir. 2024) (applying *Mathews v. Eldridge* and finding 7-month and 21-month detentions without a bond hearing violated Fifth Amendment due process rights); *Oscar v. Ripe*, --F.Supp.3d--, 2024 WL 5046043 (S.D. Fl. Sept. 27, 2024) (finding detention for one year without bond hearing violated petitioner's due process rights after applying "Sopo" (*Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 1217-18 (11th Cir. 2016) factors: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (*i.e.*, whether petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood the removal proceedings will conclude in the near future)); *Doe v. Becerra*, 732 F.Supp.3d 1071 (9th Cir. 2024) (finding petitioner's 30-month detention under 1226(c) violates due process and ordering the government to "propose an appropriate remedy" after applying five factors: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held); *Sarr v. Scott*, --F.Supp.3d--, 2025 WL 388652 (W.D. Wash. Feb. 4, 2025) (applying "*Martinez* test" (2019 WL 5968089), at *6-7 (W.D. Wash. May 23, 2019) as follows: (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the

9

removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.); *Eliazar v. Wofford*, 2025 WL 711190 (E.D. Cal. Mar. 5, 2025 (applying *Mathews v. Eldridge* and granting petition in part); *Diep v. Wofford*, 2025 WL 604744 (E.D. Cal. Feb. 25, 2025) (applying *Mathews v. Eldridge* and granting petition); *Lopez v. Garland*, 631 F. Supp. 3d 870 (E.D. Cal. Sept. 29, 2022) (granting petition in part after declining to apply *Mathews v. Eldridge*, and instead considering three factors: (1) total length of detention to date, (2) likely duration of future detention; (3) and the delays in the removal proceedings caused by the petitioner and the government); *But see Oladipupo v. Schmidt*, 2023 WL 3568498 (E.D. Wis. May 18, 2023) (denying petition for writ of habeas corpus after applying five factor test: (1) total length of detention; (2) foreseeability of proceedings concluding gin the near future (likely duration of future detention); (3) period of detention compared to criminal sentence; (4) promptness/delay of immigration authorities or detainee; (5) likelihood that proceedings will culminate in final removal order); *S.C. v. Warden, Stewart Detention Center*, 2024 WL 796541 (M.D. Ga. Jan. 5, 2024) (applying *Sopo* factors as "persuasive authority" and recommending Respondent's motion to dismiss be granted with particular emphasis on the reasonableness of the government's efforts to facilitate deportation during petitioner's 23-month detention); *Romero-Romero v. Wofford*, 2025 WL 391861 (E.D. Cal. Feb. 4, 2025) (applying *Mathews v. Eldridge* and granting respondent's motion to dismiss petition).

      Here, Petitioner argues the *Mathews v. Eldridge* factors "clearly weigh in his favor," and due process "requires" an individualized bond hearing because his 14-month detention has become "prolonged." (Doc. 1 at 17-22). Respondent argues that Petitioner is properly detained as mandated under § 1226(c) as an aggravated crime of violence felony offender; and "due process concerns of indefinite detention do not apply here" because detention under § 1226(c) has a "definite termination point" at the conclusion of Petitioner's ongoing "procedural protections due to him as he challenges the removal order." (Doc. 9 at 4-5 (citing *Jennings*, 583 U.S. at 304)). In his opposition, Petitioner argues that § 1226(c), *Jennings*, and *Demore* do not foreclose his ability to bring an as-applied challenge to his "prolonged" detention, nor does his decision to

10

exercise his right to appeal; and he restates the argument made in his Petition that the *Mathews* balancing test is applicable here and due process entitles him to a bond hearing as his detention has become prolonged.  (Doc. 10).

After thorough review of the clear and unequivocal statutory text of § 1226(c), relevant Supreme Court precedents, and the cases identified above, this Court declines to apply any "multi-part, judge-made 'reasonableness' balancing test" as unnecessary under the circumstances presented here.  *See Banyee v. Garland*, 115 4th 928, 931, 933 (8th Cir. 2024) ("*Zadvydas* and *Demore* have already done whatever balancing is necessary.").  Petitioner's attempt to recast his challenge to his detention based solely on its length as a violation of due process essentially is an end-run of § 1126(c)'s express language as already interpreted by the Supreme Court.

In *Demore* and *Jennings*, the Supreme Court reaffirmed its "longstanding view that the government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526; *Jennings*, 583 U.S. 304 ("detention under § 1226(c) has a 'definite termination point': the conclusion of proceedings. As we made clear here, that 'definite termination' – **and not some arbitrary time limit devised by the courts** – marks the end of the Government's detention authority under § 1226(c).") (emphasis added).  The common thread throughout the litany of balancing tests, cited above, is a court's individual evaluation of at what point in time detention without a bond hearing extends past that "limited period," thereby violating a detainee's due process rights under the Fifth Amendment. *See, e.g., id*. at 529 (noting in 2003 that "not only does detention have a definite termination point," but in the "majority of cases" § 1226(c) "lasts for less than … 90 days," 85% of the cases are completed in an average time of 47 days, and in the remaining 15% of cases involving appeals, the process "takes an average of four months."); *cf. Martinez*, 124 F.4th at 789 (Bumatay, J., dissenting) (noting in 2004 that the median processing time for an immigration case to reach a merits decision is 39 months); *see also Doe v. Becerra*, 732 F. Supp. 3d 1071, 1079 (quoting *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) ("at some point detention can become excessively prolonged, and therefore punitive, resulting in a due process violation.  This can be true even if the detention will necessarily end."); *Gonzalez v. Bonnar*, 2019 WL 330906, at *5

1  (N.D. Cal. Jan. 25, 2019) (collecting cases) ("This Court concludes, as have nearly all the other courts to consider this issue, that the starting point of the analysis is the length of detention – both how long the petitioner has been detained and how long the detention is likely to last.").

Here, the crux of Petitioner's claim is that procedural due process protection, in this case, a bond hearing before a neutral adjudicator, is automatically triggered when detention without a bond hearing becomes "prolonged."[4]  (Doc. 1 at 15-17).  As apparent support, Petitioner argues the Supreme Court's upholding of mandatory detention of a noncitizen under § 1226(c) in *Demore* was "based," in part, on the Court's understanding that detentions under § 1226(c) are typically 'brief.'"  (Doc. 1 at 16-17 (also citing decisions in this district finding "prolonged" detention without a bond hearing violated petitioners' due process rights); Doc. 10 at 4 (noting *Demore* "rejected a facial challenge to immigration detention without a bond hearing under § 1226(c) on the understanding that § 1226(c) authorized detention without a hearing for a 'limited period' consisting of 'roughly a month and a half in the vast majority of cases" and up to five months in a "minority of cases").  Petitioner's counsel attests that his ongoing removal proceedings are "likely" to continue for "many months," and argues that Respondents "do not – and cannot – assert that [Petitioner's] now over 13-month detention is 'brief.'"  (Doc. 1-3 at 3, ¶ 12; Doc. 10 at 6).

As an initial matter, a close reading of *Demore* indicates that while the Court certainly considered the average length of detention "at stake" for an alien under § 1226(c) in 2003 as part of its finding, discussed *supra*, that *Zadvydas* was "materially different" from *Demore* because the period of detention under 8 U.S.C. § 1231 was "indefinite" and "potentially permanent" as opposed to detention under § 1226(c) which was of a "much shorter duration," the Court made no

---

[4] The Court is compelled to note that the analysis here stands in contrast to the deluge of cases currently before the court wherein petitioners are found to have a protected liberty interest in remaining out of custody after being released on parole or bond pending removal proceedings without regard to the length of time they have been re-detained. *See, e.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025) ("[e]ven when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [he or] she will be re-detained only if [he or] she violates the conditions of her release.") (collecting cases).  Here, similar to the petitioner in *Jennings,* regardless of Petitioner's lawful permanent resident status assigned as a young child, his subsequent criminal conviction compels mandatory detention under § 1226(c) while his ongoing removal proceedings are pending.

holding whatsoever regarding detention becoming "prolonged" such that it might offend due process rights of a § 1226(c) detainee. *See Demore*, 538 U.S. at 528-31. Moreover, the undersigned does not read *Demore* as requiring a consideration of the temporal bounds of a "limited period" completely separate from determining whether that "limited period" is "*necessary for their removal proceedings*." *Demore*, 538 U.S. at 526 (emphasis added). Rather, as noted by the Eighth Circuit, "nothing suggests that length determines legality. To the contrary, what matters is that detention pending deportation 'ha[s] a definite termination point" – deporting or releasing the alien – making it "materially different" from the "potentially permanent" confinement authorized by other statutes. The *why*, in other words, is more important than *how long*." *Banyee*, 115 F.4th at 932 (*citing, e.g., Zadvydas*, 533 U.S. at 697) (emphasis in original)); *Jennings*, 583 U.S. 304. The Court finds the concurring opinion of Judge Bumatay in *Martinez v. Clark*, particularly instructive and convincing as to this issue. In *Martinez*, Judge Bumatay agreed that the court has jurisdiction to review whether an alien is a "danger to the community" under Supreme Court precedent but specifically noted the court

> should never have gotten to this point. That's because we had no authority to order a new bond hearing for a "criminal alien[ ]" subject to mandatory detention under 8 U.S.C. § 1226(c). That provision provides that an alien who commits certain offenses "shall" be taken into custody. 8 U.S.C. § 1226(c)(1). Instead, egged on by some of our wayward precedent, the district court believed that due process requires that [petitioner] receive a bond hearing (and be potentially released) simply because his removal proceeding had become "prolonged." *See Martinez v. Clark*, 2019 WL 5962685, at *1 (W.D. Wash. 2019). But this defies Congress's clear command and assumes an outsized role for federal courts over immigration-detention decisions. Simply put, the Due Process Clause doesn't grant federal courts the freedom to refashion statutory detention requirements in the immigration context.
>
> \*\*\*
>
> Due process doesn't require bond hearings for criminal aliens mandatorily detained under § 1226(c)—even for prolonged periods. "As a matter of text, structure, and history, Congress may authorize the government to detain removable aliens throughout their removal proceedings." *Rodriguez Diaz*, 53 F.4th at 1214 (Bumatay, J., concurring). And "[n]othing in the Due Process Clause requires individualized bond determinations beyond what Congress has established." *Id.* at 1214. That's because, in the immigration context, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521, 123 S.Ct. 1708

13

> (simplified). So while mandatory detention may not be allowed for criminal purposes and most civil contexts, immigration stands apart from those areas.
>
> Because Congress possesses "considerable authority over immigration matters," mandatory detention under § 1226(c) has been upheld "as a constitutionally valid aspect of the deportation process." *Id.* at 523, 123 S.Ct. 1708 (simplified). Thus, when detention is for an "immigration purpose," "Congress may grant the Executive the authority to detain aliens during removal proceedings—with or without bond hearings." *Rodriguez Diaz*, 53 F.4th at 1218 (Bumatay, J., concurring). "And so long as the government follows reasonable, individualized determinations to ensure that the alien is properly in removal proceedings, due process does not require more bond hearings *even after a prolonged period.*" *Id.* (emphasis added).
>
> **Absent any allegation that the extended detention here is unrelated to an immigration purpose, the mere fact that detention is "prolonged" doesn't alter the statutory framework**. Indeed, in our circuit, the median processing time for an immigration case to reach a merits determination is 39 months. Does that mean that any immigration proceeding appealed in the Ninth Circuit would automatically invalidate mandatory detention under § 1226(c)? Why should our delays in processing cases impact Congress's design? … Thus, no extra bond hearing was due here.

*Martinez v. Clark*, 124 F.4th 775, 787-89 (9th Cir. 2024) (Bumatay, J, dissenting) (emphasis added).

To be clear, this common-sense reasoning does not foreclose the possibility of a due process violation and bond hearing for a § 1226(c) detainee where circumstances evince that detention ***is for some other non-immigration purpose***. In *Demore*, the Court acknowledged that "detention … d[oes] not serve its purported immigration purpose" when removal is "no longer practically attainable." 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690) (where "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed"); *see also id*. at 532-33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against the flight or dangerousness, but to incarcerate for other reasons."); *Wong Wing v. United States*, 163 U.S. 228, 237-38 (1896) (finding civil detention of a removeable noncitizen violates the Constitution if it is punitive). However, consistent with

14

existing Supreme Court precedent and without further guidance specifically as to this issue from the Supreme Court or the Ninth Circuit, this Court finds the threshold question in considering Petitioner's claims of unreasonably prolonged detention under § 1226(c) without a bond hearing is whether Petitioner's continued detention serves the purported immigration purpose and has a definite termination point, as opposed to any "balancing test" to determine whether procedural due process is due based largely on the length of Petitioner's detention without a bond hearing.[5] *See Perez-Cortez v. Mayorkas*, 2022 WL 1431833, at *3 (D. Nev. May 4, 2022) (denying petition because detention under § 1226(c) "is mandatory, and [petitioner] is not being detained indefinitely," rather, petitioner remains detained because he is still litigating his order of removal); *Banyee*, 115 F.4th at 933-34 ("What is important is that, notwithstanding a delay, deportation remains a possibility.").

Here, because removal proceedings are still actively "pending" and Petitioner is not eligible for relief under 8 U.S.C. § 1226(c)(2), detention is mandatory under § 1226(c). 8 U.S.C. § 1226(c); *Jennings*. 583 U.S. at 303-04; *Demore*, 538 U.S. at 527; *see also Rimtobaye v. Castro*, 2024 WL 5375786, at *3 (W.D. Tex. Oct. 29, 2024) (finding petitioner detained under § 1226(c) was not constitutionally entitled to a bond hearing during his removal proceedings, despite the length of his detention, "because he is not in witness protection and not entitled to relief under § 1226(c)(2) and because he is still in removal proceedings"). As argued by Respondent, "[d]etention of a violent criminal non-citizen alien, as in this case, during removal proceedings remains constitutional so long as it continues to 'serve its purported immigration purpose.' Those

---

[5] In reply, Petitioner argues the undersigned magistrate's analysis in *Keo V. Warden of the Mesa Verde ICE Processing Cntr.*, 2025 WL 1029392 (E.D. Cal. Apr. 7, 2025), as here, identifying the threshold matter as "whether Petitioner's continued detention serves the purported immigration purpose and has a definite termination point," is not the "relevant threshold" question in considering an as-applied procedural due process claim; rather, the salient question is whether a protected liberty interest exists. (Doc. 10 at 9, n.3 (citing, e.g., *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). This argument mischaracterizes the court's analysis in *Keo*. Even assuming, which the Court does not, that a criminal alien held in mandatory detention pursuant to § 1226(c) has a protected liberty interest in freedom from undefined "prolonged" detention without a bond hearing, the court in *Keo* declined to apply one of the multi-factor balancing tests to determine whether detention under § 1226(c) has become so prolonged in violation of due process, as outlined in detail *supra*, and instead found the appropriate analysis in determining whether detention has become "unreasonably prolonged" is whether it has a definite termination point and continues to serve the purported immigration purpose.

15

purposes – ensuring a noncitizen alien's appearance for removal proceedings and preventing the non-citizen from committing further offenses – are present throughout removal proceedings and do not abate over time while those proceedings are still pending." (Doc. 20 at 5 (citing *Demore*, 538 U.S. at 527)); *see also Rodriguez Diaz*, 53 F.4th at 1208 (noting the government's interests only increase with the passage of time as they devote resources to "securing an alien's ultimate removal").

      As detailed above, Petitioner is awaiting a decision on his PFR regarding an order that *requires* his removal. Petitioner does not argue, nor does the Court discern, that the ongoing proceedings are intended to "incarcerate [him] for other reasons," nor does Petitioner argue that his detention does not serve "its purported immigration purpose" or that he is being detained indefinitely. *See Demore*, 538 U.S. at 533 (Kennedy, J., concurring). Moreover, Petitioner does not point to any "unreasonableness" in the length of removal proceedings that is directly attributable to the government; rather, the delay appears to be a direct result of Petitioner taking full advantage to contest his removal, which is his due process right. He has been afforded procedural process in the form of applications for relief from removal, application for asylum, protection under the CAT, and appeals including the PFR currently pending before the Ninth Circuit. *See Demore*, 538 U.S. at 530-31 ("Respondent was detained for somewhat longer than the average … but respondent himself had requested a continuance of his removal hearing."); *S.C. v Warden*, 2024 WL 796541, at *6 ("while Petitioner has been detained for approximately 23 months at this point, the bulk of this period was while the [court] considered his petitions for review and other motions and not due to unexplained inactivity by the immigration courts."). "While [Petitioner] certainly has the right to pursue all available avenues to combat his removal, post-*Jennings*, he does not have the right to parlay the resulting delay into a bond hearing." *Oladipupo*, 2023 WL 3568498, at *5 (noting there was "no indication proceedings were unreasonably delayed for any reason attributable to the government," rather, the length of petitioner's detention "is primarily attributable to the avenues for relief that he has pursued and his requests for extensions of time.").

      In conclusion, it is undisputed that Petitioner's detention is mandated under § 1226(c) and

he does not meet any of the statutory conditions for release. *See* 8 U.S.C. § 1226(c); *Jennings*. 583 U.S. at 303-04.  As discussed in detail above, Petitioner's detention is not indefinite; there is a "definite termination point" at the conclusion of his ongoing legal challenges. *Jennings*, 583 U.S. 304.  There is no indication that the ongoing removal proceedings do not serve their intended purpose or are intended to "incarcerate him for other reasons." *Demore*, 538 U.S. at 527, 538. Therefore, the Court finds no due process violation in Petitioner's continued detention under § 1226(c) without a bond hearing at this time. *See Romero-Romero*, 2025 WL 391861, at *9 ("Should circumstances change and continued detention appear to be indefinite in nature, due process may require a different outcome.").

Accordingly, it is hereby **RECOMMENDED:**

The petition for writ of habeas corpus (Doc. 1) be DENIED.

**NOTICE TO PARTIES**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id*.; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    February 6, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE